UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

RICHARD LYLE AVERETTE,

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

        Defendant.

NO. C17-5697-JPD

ORDER

Plaintiff Richard Lyle Averette appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

I.     FACTS AND PROCEDURAL HISTORY

Plaintiff is a 51-year-old man with a 9th-grade education. Administrative Record ("AR") at 45. His past work experience includes employment as a cashier, donation attendant, and laborer. AR at 154. Plaintiff was last gainfully employed in October 2008. AR at 153.

ORDER - 1

Plaintiff filed for DIB and SSI in March 2012 and October 2012, respectively, alleging an onset date of October 1, 2008. AR at 130-37. Plaintiff asserts that he is disabled due to hearing and vision loss. AR at 153.

The Commissioner denied Plaintiff's applications initially and on reconsideration. AR at 77-79, 81-82. Plaintiff requested a hearing, which took place on September 23, 2013. AR at 31-58. On January 17, 2014, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that if Plaintiff stopped substance abuse, he could perform a specific job existing in significant numbers in the national economy. AR at 14-26. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).

Plaintiff sought judicial review, and the U.S. District Court for the Western District of Washington reversed the ALJ's decision and remanded for further administrative proceedings. AR at 688-700. A different ALJ held another hearing on November 8, 2016 (AR at 624-58), and subsequently found Plaintiff not disabled. AR at 595-614. On September 1, 2017, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. EVALUATING DISABILITY

As the claimant, Mr. Averette bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at

any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g),

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

ORDER - 4

416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V. DECISION BELOW

On June 30, 2017, the ALJ issued a decision finding the following:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since October 1, 2008, the alleged onset date.

3. The claimant has the following severe impairments: Dysthymic Disorder/Major Depressive Disorder; Panic Disorder with Agoraphobia; Alcohol Dependence; Diabetes; Hearing Loss; Vision Loss; and Obesity.

4. The claimant's impairments, including the substance use disorder, meet sections 12.04 and 12.06 of 20 CFR Part 404, Subpart P, Appendix 1.

5. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

6. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.

7. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) meaning he can lift/carry twenty pounds occasionally and up to ten pounds frequently.  He can stand/walk for six hours in an eight-hour workday and sit for hours in an eight-hour workday.  He can climb ladders, ropes, and scaffolds no greater than occasionally.  He can have no exposure to noise levels greater than moderate.  He is limited to occupations that require no peripheral acuity.  He is limited to tasks defined by a reasoning level of no greater than two, meaning reasoning level of two defines the scope of tasks. He can have seldom interaction with the public and occasional interaction with co-workers.

8. If the claimant stopped the substance use, the claimant would be unable to perform past relevant work.

9. The claimant was born on XXXXX, 1966 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[2]

10. The claimant has at least a high school education and is able to communicate in English.

11. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

12. If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform.

13. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(g), 404.1535, 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

AR at 598-613.

## VI. ISSUE ON APPEAL

The issue on appeal is whether the ALJ erred in assessing certain medical opinions. Dkt. 8 at 1.

## VII. DISCUSSION

A. <u>The ALJ did not err in assessing the hearing testimony of non-examining medical expert Julian Kivowitz, M.D.</u>

Dr. Kivowitz testified at Plaintiff's 2016 hearing, and indicated that Plaintiff's impairments included alcohol dependence, major depressive disorder, and panic disorder, and that these impairments met Listings 12.04 and 12.09. AR at 631-32. Dr. Kivowitz further

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

testified that he expects to see drug and alcohol use impact a person's functioning for three months after sobriety begins, but not after that period, even though other professionals in his field believe drugs and alcohol impact a person's functioning for up to a year after use. AR at 632-33.

The ALJ assigned little weight to Dr. Kivowitz's testimony, finding it inconsistent with the record. Specifically, the ALJ cited Plaintiff's struggles with addiction and withdrawal for longer than three months after his date of sobriety, but noted that he started to show significant improvement ten months after sobriety. AR at 609. The ALJ also found Dr. Kivowitz's testimony to be contradicted by the testimony of Plaintiff's stepfather, Earl Fettit: Mr. Fettit testified that Plaintiff became anxious and upset when drinking, which the ALJ interpreted to be inconsistent with Dr. Kivowitz's "opinion that the claimant's alcohol use did not affect his functioning[.]" AR at 609. Plaintiff argues that the ALJ's reasons for discounting Dr. Kivowitz's testimony are not legally sufficient.[3]

1.  *Legal standards*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881

---

[3] Plaintiff also argues that the ALJ found that his low motivation to work undermined Dr. Kivowitz's opinion, but the ALJ did not so find. *See* AR at 609. The ALJ mentioned Plaintiff's low motivation to work in the paragraph discussing Dr. Kivowitz's testimony, but did not find that this factor was relevant to Dr. Kivowitz's testimony, and therefore the Court does not find that the ALJ discounted the testimony on that basis.

ORDER - 7

F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495

F.3d at 632-33.

    2.    *Evidence of improvement*

Plaintiff argues that the ALJ cherry-picked from records to find that his functioning started to improve nine or ten months after his sobriety. Dkt. 8 at 3-4. Plaintiff notes that records from this same time period continue to document some functional problems. *Id*. Plaintiff appears to misunderstand the purpose for which the ALJ cited the longitudinal record: the ALJ indicated that, contrary to Dr. Kivowitz's testimony, Plaintiff's functionality did not begin to improve after only three months of sobriety, but instead did not start to improve until nine or ten months after sobriety. *See* AR at 609. Plaintiff's citation to records indicating that his symptoms were not entirely improved within 10 months of his sobriety date does not suggest error in the ALJ's interpretation of Dr. Kivowitz's testimony. The ALJ cited numerous records indicating that Plaintiff's functionality did begin to improve in early 2013, and Plaintiff has not shown that the ALJ's inference is not supported by substantial evidence. *See* AR at 605-06. The ALJ did not err in considering the extent to which Dr. Kivowitz's testimony was consistent with the longitudinal medical record. *See Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) ("The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record.").

    3.    *Mr. Fettit's testimony*

The ALJ also cited Mr. Fettit's contrary testimony as a reason to discount Dr. Kivowitz's testimony, because Mr. Fettit described functional impacts of Plaintiff's alcohol use and the ALJ interpreted Dr. Kivowitz's testimony to suggest that Plaintiff's alcohol use did not impact his functioning. AR at 609-10.

Mr. Fettit did not describe any particular functional limitations that he observed Plaintiff currently experiencing, but he indicated that when Plaintiff was previously using

alcohol, he had been anxious and upset. *See* AR at 645. The ALJ contrasted this testimony with Dr. Kivowitz's testimony that Plaintiff's functional limitations as expressed in Global Assessment of Functioning ("GAF") scores did not reflect any impact from alcohol use when Plaintiff was sober. AR at 609 (referencing AR at 632).

Plaintiff argues that there is no inconsistency between Mr. Fettit's testimony and Dr. Kivowitz's testimony (Dkt. 8 at 4), but he does not acknowledge the ALJ's purpose in citing Mr. Fettit's testimony: Mr. Fettit's testimony is consistent with Plaintiff's functional improvement with longer sobriety, because Mr. Fettit did not describe any functional limitations during the period that Plaintiff had been living with him while sober. This testimony is arguably inconsistent with Dr. Kivowitz's suggestion that Plaintiff's low GAF scores did not reflect any impact from alcohol use. *See* AR at 632. The ALJ reasonably found Dr. Kivowitz's testimony to be inconsistent with Mr. Fettit's testimony, and did not err in discounting Dr. Kivowitz's testimony on that basis.

Because the ALJ provided multiple specific, legitimate reasons to discount Dr. Kivowitz's testimony, the ALJ did not err in discounting that testimony.

B.  <u>The ALJ did not err in discounting the opinion of examining psychologist Bryan Zolnikov, Ph.D.</u>

Dr. Zolnikov examined Plaintiff in January 2015 and completed a DSHS form opinion describing his symptoms and limitations. AR at 873-83. Dr. Zolnikov indicated that, *inter alia*, Plaintiff had several marked functional limitations and described mostly normal findings on mental status examination. AR at 875-77.

The ALJ found Dr. Zolnikov's opinion to be inconsistent with his own findings, Plaintiff's treatment notes, and Plaintiff's activity level, and thereby assigned it little weight. AR at 611. The ALJ specifically found Plaintiff's ability to babysit his young nieces and

ORDER - 10

nephews to be inconsistent with Dr. Zolnikov's opinion that he could not perform routine tasks without special supervision, and that Plaintiff's ability to complete yardwork and household chores was inconsistent with Dr. Zolnikov's opinion that he could not complete a normal workday without interruptions from his symptoms. *Id*. The ALJ also cited Plaintiff's medical record as demonstrating "steady improvement" with sobriety and compliance with treatment, and highlighted Dr. Zolnikov's many normal objective findings, some of which reflected improvement since an April 2012 examination. *Id*. The ALJ suggested that Dr. Zolnikov relied on Plaintiff's self-report, which the ALJ did not find to be consistent with the record. *Id*. Plaintiff contends that the ALJ's reasons to discount Dr. Zolnikov's opinion are not legally sufficient, and the Court will address them in turn.

1. *Dr. Zolnikov's own findings*

Plaintiff argues that not all of Dr. Zolnikov's findings were normal, and suggests that the abnormal findings could have supported his opinion as to the marked functional limitations. Dkt. 8 at 5. Plaintiff's alternative view of the evidence does not establish error in the ALJ's decision, however. None of the abnormal findings cited by Plaintiff — specifically his poor eye contact, articulation difficulty, labile affect, and sad and anxious affect (Dkt. 8 at 5 (citing AR at 880)) — pertain to his ability to perform routine tasks without special supervision, to perform activities within a schedule, to maintain regular attendance, or to be punctual without special supervision, for example. Dr. Zolnikov did not cite any particular evidence as support for his opinion regarding Plaintiff's functional limitations, and the ALJ reasonably found that opinion to be inconsistent with the largely normal objective examination findings.

2. *Treatment notes*

The ALJ characterized Plaintiff's medical records as demonstrating steady improvement with sobriety and treatment, and construed that record to be inconsistent with the

ORDER - 11

marked limitations described by Dr. Zolnikov. Plaintiff argues that the ALJ erred in failing to identify which records demonstrate steady improvement (Dkt. 8 at 5), but the ALJ's decision highlights these records in great detail earlier in the decision. *See* AR at 605-07. That Dr. Kivowitz did not appear to concur with the ALJ's interpretation of the record does not indicate that the ALJ's interpretation is unreasonable or erroneous: Dr. Kivowitz did not discuss most of the record in detail and was not asked to express an opinion about whether the record demonstrated improvement with sobriety and treatment. The ALJ did not err in finding Dr. Zolnikov's opinion to be inconsistent with the longitudinal record.

3. *Activities*

Plaintiff contends that the ALJ erred in finding his babysitting, yardwork, and household chores to be inconsistent with Dr. Zolnikov's opinion, because he did not perform these activities in a workplace environment. Dkt. 8 at 6. But activities need not be performed in a workplace environment in order to be found inconsistent with a doctor's opinion on functional limitations. *See, e.g., Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (affirming an ALJ's rejecting a physician's opinion that a claimant's mental impairments were disabling, in light of evidence that the claimant was able to maintain a one-acre garden and assisted with the restoration of an old house). The ALJ explained why he found specific activities to be inconsistent with Dr. Zolnikov's opinion in specific respects, and the ALJ's interpretation is reasonable.

4. *Reliance on subjective self-report*

Plaintiff argues that there is no indication that Dr. Zolnikov overly relied on his self-report in reaching his conclusions. Dkt. 8 at 6. But the majority of Dr. Zolnikov's evaluation notes consist of a record of Plaintiff's own statements. AR at 873-74. The ALJ provided many reasons to discount Plaintiff's self-report, all of which are unchallenged. AR at 607-09.

ORDER - 12

The ALJ did not err in discounting Dr. Zolnikov's opinion to the extent he relied on Plaintiff's self-report. *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("As the district court noted, however, the treating physician's prescribed work restrictions were based on Bray's subjective characterization of her symptoms. As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements.").

Because the ALJ provided multiple specific, legitimate reasons to discount Dr. Zolnikov's opinion, the ALJ did not err in discounting that opinion.

## VIII. CONCLUSION

The role of this Court is limited. As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*, 53 F.3d at 1039. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas,* 278 F.3d at 954. While it may be possible to evaluate the evidence as Plaintiff suggests, it is not possible to conclude that Plaintiff's interpretation is the only rational interpretation.

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision.

DATED this 22nd day of June, 2018.

*/s/ James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge

ORDER - 13